**Richard JOHNSON, Plaintiff,**

v.

**COMMISSIONER OF CORRECTIONAL SERVICES, Charles Scully, Superintendent, Green Haven Correctional Facility, Thomas Pisco, and Ralph Reynolds, Defendants.**

**86 Civ. 7672 (JES).**

United States District Court, S.D. New York.

Nov. 21, 1988.

Richard Johnson, Stormville, N.Y., pro se.

Robert Abrams, Atty. Gen. of State of N.Y., New York City, for defendants; Eugene Zegarowicz, Asst. Atty. Gen., of counsel.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge:

Richard Johnson, prisoner *pro se*,[1] brings this action pursuant to 42 U.S.C. § 1983 (1982). Plaintiff contends that confinement in a cell with an inoperable sink for nine days constitutes cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights. Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56(c) on the grounds of failure to state a claim upon which relief can be granted and the doctrine of qualified immunity. In addition, defendants Commissioner of Correctional Services and Charles Scully, Superintendent of the

---

**1.** In his affidavit opposing summary judgment, filed July 11, 1988, plaintiff made a request for appointment of counsel. The Court informed plaintiff by letter of the appropriate procedures for applying for appointment of counsel. To date, plaintiff has declined to take advantage of these procedures. Therefore, his request for appointment of counsel must be denied.

Green Haven Correctional Facility ("GCF") move for summary judgment on the ground that with respect to them plaintiff has failed to sufficiently allege causation.[2] For the reasons set forth below, defendants' motion is granted.

## FACTS

The following facts, except as noted, are undisputed.

On June 15, 1986, Corrections Officers Thomas Pisco and Ralph Reynolds performed a "cell frisk" of plaintiff's cell at the GCF recovering various items of contraband and weapons. *See* Affidavit of Thomas Pisco ("Pisco Aff.") at ¶¶ 3–4. In addition, the officers removed a nine inch plastic push rod from the sink of plaintiff's cell. This rod was removed from the sink because in the past inmates had successfully fashioned it into a weapon. *Id.* at ¶¶ 5–7. Without the rod, it is impossible to obtain water from the sink. *Id.* at ¶ 8.

The same day, and in full compliance with normal prison disciplinary procedures, plaintiff was found guilty of possession of the weapons and contraband and was sentenced to thirty days cell confinement. *See* Defendants' Exhibit ("Def. Ex.") 1 at 2. Plaintiff was returned to his waterless cell and remained there until June 23, when he was transferred to another cell. During the time of his cell confinement, from June 15–23, plaintiff alleges that he did not have the use of the water from his sink, nor water from any other source, other than a bucket of water he obtained while showering at some point during the relevant period. *See* Complaint at ¶ IV; Deposition of Richard Johnson ("Johnson Dep.") at 20–21.[3] Plaintiff did, however, receive a beverage with each of three meals on every day of his cell confinement. *See* Johnson Dep. at 22.

## DISCUSSION

■ Plaintiff claims that the absence of running water from his cell constitutes cruel and unusual punishment in violation of his Eighth and Fourteenth Amendment rights. In addition, plaintiff alleges that the lack of water caused him to become dehydrated and aggravated his migraine headaches because he was unable to take medication without ready access to water. *See* Complaint at ¶ IV–A, Johnson Dep. at 29–31. As compensation for these alleged injuries plaintiff seeks $110.00 per day for every day he was confined to his cell without running water. *See* Complaint at ¶ V.

Defendants first argue that plaintiff's allegations do not state a claim upon which relief can be granted. The Second Circuit has held that "a prisoner's complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Maggette v. Dalsheim,* 709 F.2d 800, 803 (2d Cir.1983). Here defendant alleges violations of his Eighth Amendment rights. For the purposes of this motion the Court accepts plaintiff's version of the facts, *see supra,* note 2, but even under that set of facts plaintiff's

---

**2.** Defendants also ask this Court to certify in writing that any appeal by plaintiff would not be taken in good faith, thus barring plaintiff, under 28 U.S.C. § 1915(a) (1982), from appealing *in forma pauperis.* The Second Circuit has held that the threshold level of good faith is minimal and that "doubts about the substantiality of the issues presented should normally be resolved in the applicant's favor." *Miranda v. United States,* 458 F.2d 1179, 1181 (2d Cir.), *cert. denied,* 409 U.S. 874, 93 S.Ct. 207, 34 L.Ed.2d 126 (1972). Tested by this precept, the Court cannot find that plaintiff's claims are so frivolous as to warrant the requested certification.

**3.** Defendant vigorously disputes plaintiff's alleged lack of water and has introduced evidence that water was available to plaintiff every day during his exercise period, *see* Affidavit of Richard Muller at ¶¶ 2–4, that a bucket of water for cleaning and bathing purposes was brought to plaintiff every day during the relevant period, *see* Pisco Aff. at ¶ 12, and that plaintiff rigged a substitute for the removed push rod enabling him to obtain water from his sink, *see* Affidavit of Ralph Weir at ¶¶ 4–7. Plaintiff has denied defendant's factual claims in his deposition testimony. Although these facts are in dispute, the Court must, on a motion for summary judgment, accept plaintiff's factual contentions as true. Even under plaintiff's version of the facts he fails to state a claim upon which relief can be granted.

claim does not rise to the level of an Eighth Amendment violation.

In order to make out a section 1983 claim for a violation of a prisoner's Eighth Amendment rights, the relevant action must constitute "an unnecessary and wanton infliction of pain," or be "repugnant to the conscience of mankind." *Estelle v. Gamble,* 429 U.S. 97, 105–06, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). At a minimum, there must be " 'at least some allegation of a conscious or callous indifference to a prisoner's rights' ". *Williams v. Bennett,* 689 F.2d 1370, 1380 (11th Cir.1982), *cert. denied,* 464 U.S. 932, 104 S.Ct. 335, 78 L.Ed.2d 305 (1983), *quoting Wright v. El Paso County Jail,* 642 F.2d 134, 136 (5th Cir.1981).

Although the treatment of plaintiff in this case may have resulted in some hardship and discomfort, this Court cannot say that the actions complained of here violate the Eighth Amendment.

It is undisputed that plaintiff received beverages with his meals, and that he obtained a bucket of water at one point during his confinement. Moreover, plaintiff does not dispute that on two occasions, defendants sent someone to repair the sink, but the repair failed for lack of proper parts. *See* Pisco Aff. at ¶ 13; Johnson Dep. at 37. Further, once plaintiff's dehydration was confirmed by the facility's nurse, plaintiff was removed to another cell. *See* Johnson Dep. at 31–32. These facts indicate that plaintiff was not deliberately deprived of necessary liquids during the period complained of.

Moreover, the deprivation that did occur was not the result of conscious or callous indifference, or even a desire to punish. Instead, it occurred in part as a consequence of plaintiff's own violation of prison rules, and the experience of prison officials that parts of the sink could be used to fashion weapons.

Since, "a court's function under the eighth amendment standards is to determine the *'minimal* civilized measure of life's necessities,' " *Walker v. Mintzes,* 771 F.2d 920, 927 (6th Cir.1985), *quoting Rhodes v. Chapman,* 452 U.S. 337, 347, 101

S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (emphasis in original), the facts here simply do not rise to the level of an Eighth Amendment violation.

Defendants also argue that even assuming plaintiff could state a claim, they cannot be found personally liable because they are shielded by the doctrine of qualified immunity. This argument is persuasive. The defense of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known". *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The question of whether the constitutional rights plaintiff relies upon were so well established that a reasonable person should have known of them at the time of the alleged violation is a question of law for the Court. *See Stein v. Board of City of New York,* 792 F.2d 13, 17–18 (2d Cir.), *cert. denied,* 479 U.S. 984, 107 S.Ct. 572, 93 L.Ed.2d 576 (1986). The Court has already determined that defendant's actions do not give rise to a violation of plaintiff's Eighth Amendment rights. If this Court cannot today discern any basis for a violation of plaintiff's Eighth Amendment rights, it follows that a reasonable person could not have perceived them to exist at the time of the alleged violation. Therefore, the doctrine of qualified immunity bars plaintiff's claims.

Defendants Commissioner and Scully also move for summary judgment on the ground that they cannot be personally liable for harm caused the plaintiff if they did not participate in the act which caused the harm. Defendants Commissioner and Scully argue that because they did not order, supervise or know of the removal of the rod from plaintiff's sink, they did not participate in the alleged violation. "[P]ersonal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Williams v. Smith,* 781 F.2d 319, 323 (2d Cir.1986), *quoting McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. de-*

*nied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed. 2d 792 (1978).

To make out a claim against the Commissioner and Superintendent Scully, plaintiff's allegations must assert that the violation took place with their personal "authorization, approval or encouragement." *See Maggette, supra,* 709 F.2d at 803. The Second Circuit has delineated four ways of showing the requisite personal involvement. Plaintiff must allege either: direct participation by defendant in the infraction; failure by the defendant to remedy the wrong after hearing about it; creation of a custom or policy under which the unconstitutional practices occurred, or gross negligence in managing subordinates who caused the unlawful condition or event. *See Williams, supra,* 781 F.2d at 323–24.

■ Plaintiff, in this case, has failed to allege any type of involvement by the Commissioner in the alleged violation, while the Commissioner has averred that he did not participate. Where, as here, the complaint, and plaintiff's affidavit, read most liberally, are silent on the issue of defendant's participation, the Court must grant summary judgment for defendant Commissioner. *See Maggette, supra,* 709 F.2d at 803; *Williams, supra,* 781 F.2d at 323.

■ However, plaintiff has alleged that he informed Superintendent Scully by letter of the alleged violation and that the Superintendent responded by informing plaintiff that an investigation would be conducted. *See* Complaint at ¶ II(C)(1); Johnson Dep. at 8. The question of whether Superintendent Scully knew of the violation but did nothing is a question of fact that cannot be disposed of on a motion for summary judgment. Therefore, the Court cannot grant summary judgment in favor of Scully on that ground.

### CONCLUSION

Plaintiff has failed to state a claim upon which relief can be granted. Moreover, plaintiff has failed to allege that defendant Commissioner participated in the alleged violation. Even if such an allegation had been made plaintiff's claim against defend-

ant Commissioner, and against all other defendants, is barred by the doctrine of qualified immunity. For all of the above reasons the Court grants summary judgment for the defendant. Defendants' request to certify that any appeal is not taken in good faith is denied. The complaint is dismissed and the clerk is directed to close the above-captioned action.

It is SO ORDERED.