**Aldwin McNEAL and David Erving, Plaintiffs,**

v.

**Chris ELLERD, et al., Officials of the Racine Correctional Institution, Defendants.**

No. 92–C–0592.

United States District Court, E.D. Wisconsin.

June 2, 1993.

Aldwin McNeal and David Erving, pro se.

Stephen J. Nicks, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, WI, for defendants.

## ORDER

WARREN, Senior District Judge.

In this prisoners' civil rights case, plaintiffs Aldwin T. McNeal and David Erving, at rele-

vant times incarcerated at Racine Correctional Institution ("RCI"), charge various employees of RCI with depriving them of a functional sink in their cell, thus causing them cruel and unusual punishment in violation of the Eighth Amendment. Now before the Court is the motion of defendants Chris Ellerd, *et al.*, RCI officials, for summary judgment pursuant to Rule 56, Fed.R.Civ.P. For the following reasons, the defendants' motion will be granted.

## I. BACKGROUND

Plaintiffs spent part of their incarceration at RCI during 1992. (Complaint at ¶ III; Aff. Erving at ¶ 1.) Upon his arrival there on March 16, 1992, Erving was placed in segregation, in Waukesha West cell # 2107. (Aff. Erving at ¶ 2.) After several moments in the cell, Erving discovered that the sink was broken. He informed officers on duty, and they told him that a work order on the sink was pending. (Aff. Erving at ¶¶ 3, 4.) Erving requested that he be moved to a different cell, which request was denied by the officers on duty. (Aff. Erving at ¶ 4.) On March 19, 1992, Ellerd made rounds of the segregation unit. Erving informed Ellerd that the sink in his cell was broken and requested he be moved. (Aff. Erving at ¶ 5.) On March 20, 1992, officers on duty moved Erving to cell # 2105. (Aff. Erving at ¶ 6.) On the following day, Erving was returned to cell # 2107, over protests that he had been without running water for five days. (Aff. Erving at ¶ 7.) Erving was finally moved out of cell # 2107 on March 22, 1992. (Aff. Erving at ¶ 8.)

McNeal was placed in segregation cell # 2107 on May 8, 1992. Upon entering the cell, McNeal noticed there was no running water coming from the sink. He complained to Sergeant Rentaria, a staff member on second shift, who said someone would fix the sink. (Complaint at ¶ 1.) On May 9, 1992, McNeal informed Sergeant Pederson, a staff member on first shift, of the cell's condition, and asked to be moved. (Complaint at ¶ 2.) On May 10, 1992, McNeal informed Lieutenant Molnar, in charge of maintenance and operation of the segregation unit, of the cell's condition, and asked to be moved. (Complaint at ¶ 3.) On May 11, 1992, McNeal informed Sergeant Stern, a staff member on first shift, and Sergeant Rentaria, of the cell's condition and asked to be moved. (Complaint at ¶¶ 4, 5.) On that same day, Building Superintendent Ben Bartlien received a work order, # 4257, from Sergeant Rentaria to inspect the sink and drain in cell # 2107. (Aff. Bartlien at ¶ 4.) The work order was dated May 9, 1992 and signed by Rentaria. (*Id.*; Ex. 101.) The work order was approved on May 11, 1992 by Ellerd. Bartlien then instructed Brian Gruenweller of the maintenance staff to respond to the complaint. (Aff. Bartlien at ¶ 4.) On May 12, 1992, McNeal informed Ellerd of the cell's condition and that he was required by state law to have clean water. (Complaint at ¶ 6.) Gruenweller checked the sink on May 12, 1992 and found it satisfactory. (Aff. Bartlien at ¶ 4; Ex. 101.) On May 13, 1992, Bartlien received another work order from Sergeant Rentaria, # 4283, indicating that there was no water pressure in cell # 2107. (*Id.* at ¶ 5; Ex. 102.) Bartlien instructed Ron Urbaniak and John Aman of the maintenance staff to repair the sink. (Aff. Bartlien at ¶ 5; Ex. 102.)

Thereafter, on June 4, 1992, McNeal filed this action pursuant to 42 U.S.C. § 1983 against various RCI employees, seeking compensatory and punitive damages, as well as declaratory and injunctive relief. This Court granted him leave to proceed *in forma pauperis* on June 25, 1992 and Erving was joined pursuant to Rule 20(a), Fed.R.Civ.P., on August 18, 1992. On November 19, 1992, the defendants brought the present motion.

## II. DISCUSSION

### A. LEGAL FRAMEWORK

1. Motion for Summary Judgment

Rule 56(c), Fed.R.Civ.P., states in part that:

[Summary] judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving par-

ty is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). Thereunder, the movant carries the initial burden of asserting the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). To withstand summary judgment, however, the nonmovant "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Big O Tire Dealers, Inc. v. Big O Warehouse,* 741 F.2d 160, 163 (7th Cir.1984). In doing so, the nonmovant may not rest on mere allegations or denials in the pleadings, or upon conclusory statements in affidavits. Fed.R.Civ.P. 56(e). *See also Posey v. Skyline Corp.,* 702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983); *First Commodity Traders v. Heinold Commodities,* 766 F.2d 1007, 1011 (7th Cir.1985). Rather, the nonmovant must set forth specific facts to establish the existence of a controversial material element essential to the nonmovant's cause, and on which the nonmovant will bear the burden of proof at trial. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. at 2553; *Celotex,* 477 U.S. at 325, 106 S.Ct. at 2510–11; *see also Holmes v. Sheahan,* 930 F.2d 1196, 1199 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 423, 116 L.Ed.2d 443 (1991). In addition, the disputed fact must be material, *i.e.,* it must determine the outcome under the applicable law. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Egger v. Phillips,* 710 F.2d 292, 296 (7th Cir.1983) (en banc), *cert. denied,* 464 U.S. 918, 104 S.Ct. 284, 78 L.Ed.2d 262 (1983); *Big O Tire Dealers,* 741 F.2d at 163.

■ In deciding a motion for summary judgment, the district court must view the evidence, and draw all reasonable inferences from the record, in favor of the nonmovant. *Matsushita Electric Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Johnson v. Pelker,* 891 F.2d 136, 138 (7th Cir.1989). The court must further resolve all doubts about

the existence of genuine issues for trial against the movant. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513. Even if a genuine issue of fact exists, however, summary judgment must be granted if, in resolving all factual disputes in favor of the nonmovant, the court finds that the movant is nevertheless entitled to judgment as a matter of law. *Ross v. Franzen,* 777 F.2d 1216, 1222 (7th Cir.1985) (citing *Egger,* 710 F.2d at 296–97).

### 2. Section 1983 of Title 42, United States Code

■ Section 1983 of Title 42, United States Code, states in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured. . . .

42 U.S.C. § 1983. In resolving a motion thereunder, the district court must initially determine whether the conduct complained of: (1) was committed by a person acting under color of state law; and (2) deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States. *Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981); *Coleman v. Frantz,* 754 F.2d 719 (7th Cir.1985).

■ Under the Eighth Amendment, punishments that involve unnecessary and wanton infliction of pain, are grossly disproportionate to the severity of the crime for which an inmate was imprisoned, or are totally without penological justification, are prohibited. *Rhodes v. Chapman,* 452 U.S. 337, 346, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981); *Caldwell v. Miller,* 790 F.2d 589 (7th Cir. 1986). Also covered thereunder are conditions of confinement, *Whitley v. Albers,* 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Rhodes,* 452 U.S. at 347, 101 S.Ct. at 2399; *Caldwell,* 790 F.2d at 600; *French v. Owens,* 777 F.2d 1250, 1251 (7th

Cir.1985), whether imposed for punitive or administrative reasons. *Caldwell*, 790 F.2d at 600; *Bono v. Saxbe*, 620 F.2d 609, 611 (7th Cir.1980); *see also Preston v. Thompson*, 589 F.2d 300 (7th Cir.1978).

To establish a prima facie case that prison conditions violate the Eighth Amendment, the plaintiff must demonstrate: (1) a serious deprivation of a basic human need; and (2) prison officials' deliberate indifference thereto. *Wilson v. Seiter*, —— U.S. ——, ——, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991); *Williams v. Griffin*, 952 F.2d 820, 824 (4th Cir.1991). The first component, namely, the "sufficiently serious" nature of the acts or practices alleged, is objective. *Wilson*, —— U.S. at ——, 111 S.Ct. at 2324; *see also Hudson v. McMillian*, —— U.S. ——, ——, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992). Absent any fixed formula therefor, the court must apply the evolving standard of decency in society at large. *Rhodes*, 452 U.S. at 346, 101 S.Ct. at 2399; *Caldwell*, 790 F.2d at 600.

In the Seventh Circuit, this determination is made by examining the totality of the conditions of confinement. *French v. Owens*, 777 F.2d 1250, 1252 (7th Cir.1985); *Madyun v. Thompson*, 657 F.2d 868, 874 (7th Cir.1981).[1] Conditions that do not, alone or in combination, fall below contemporary standards of decency are not unconstitutional: "To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347, 101 S.Ct. at 2399; *Caldwell*, 790 F.2d at 600.

To establish the second component of a prima facie case, the plaintiff must show that, in inflicting the alleged punishment, "the officials act[ed] with a sufficiently culpable state of mind." *Wilson*, —— U.S. at ——, 111 S.Ct. at 2324; *see also Hudson*, —— U.S. at ——, 112 S.Ct. at 999. That is, at a minimum, the plaintiff must show that the

officials acted with "actual knowledge of impending harm easily preventable." *Duckworth v. Franzen*, 780 F.2d 645, 653 (7th Cir.1985). This component is not established if the harm is remote, or if the prison officials do not know or cannot do anything about it. *Jackson*, 955 F.2d at 22. As the Supreme Court has said: "[C]onduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety.... It is obduracy and wantonness ... that characterizes the conduct prohibited by the Cruel and Unusual Punishment Clause, [even where] that conduct occurs with establishing conditions of confinement." *Whitley*, 475 U.S. at 319, 106 S.Ct. at 1084, *quoted in Caldwell*, 790 F.2d at 601.

## B. ANALYSIS

As McNeal and Erving proceed *pro se*, the Court construes their pleadings liberally. *Hughes v. Rowe*, 449 U.S. 5, 9–10, 101 S.Ct. 173, 175–176, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972); *Caldwell*, 790 F.2d at 595; *Bates v. Jean*, 745 F.2d 1146, 1150 (7th Cir.1984). Moreover, as they face a motion for summary judgment, the Court views all evidence and inferences therefrom in a light most favorable to them, *Matsushita Electric*, 475 U.S. at 587, 106 S.Ct. at 1356; *Johnson*, 891 F.2d at 138, and resolves all factual disputes in their favor. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513. So doing, the Court finds their complaint must nevertheless be dismissed.

Whatever minor discrepancies are observed, there plainly exists no genuine issue of *material* fact. Defendants dispute neither plaintiffs' alleged deprivation of a functional sink or the alleged response of their employees and maintenance staff thereto. (*See* Defendants' Brief.) The Court thus finds that Erving was deprived of a functional sink for a total of six (6) days, the first five (5) being consecutive, and McNeal for six (6)

---

**1.** Courts have found sufficiently serious deprivation in, *inter alia*, denial of medical care, *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), generally unsanitary conditions, in-

cluding lack of potable water, *Jackson*, 955 F.2d at 22, and prolonged restrictions on physical exercise. *French*, 777 F.2d at 1255.

consecutive days. Upon these facts, the Court must determine whether defendants are entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Ross*, 777 F.2d at 1222 (citing *Egger*, 710 F.2d at 296–97).

They are. As alleged, plaintiffs' facts do not appear to support either component of a prima facie case. As both components must be demonstrated before relief can be granted, however, the Court need only reach the first. To begin, no authority of which the Court is aware has held that, absent other conditions, a dysfunctional sink constitutes cruel and unusual punishment. At least one court, in fact, has found expressly otherwise. *See Johnson v. Commissioner of Correctional Services*, 699 F.Supp. 1071, 1074 (S.D.N.Y. 1988) (confinement in cell with inoperable sink for *nine* days was not "cruel and unusual punishment"). Where the Seventh Circuit has recognized an issue pertaining to a dysfunctional sink at all, it has been only in circumstances where the "totality of the conditions," *French*, 777 F.2d at 1252; *Madyun*, 657 F.2d at 874, already actionable, was thereby adversely compounded. *See, e.g., Johnson v. Pelker*, 891 F.2d 136 (7th Cir. 1989). In *Johnson*, for instance, the court found a lack of running water in a segregation cell for three days actionable because, *inter alia*, the inmate was thus unable to clean cell walls smeared with human feces. *Id.* at 139.

Pursuant to the Wisconsin Administrative Code, the Court notes, each cell in RCI's segregation unit must have a clean mattress, and adequate lighting, heat, and ventilation. Wis.Admin.Code § DOC 303.70(1). Neither McNeal nor Erving makes any allegation that, in violation of this provision, generally unsanitary conditions existed. Nor do they allege that the dysfunctional sink caused any particular unsanitary conditions in their cell. In fact, what evidence there is shows that the entire segregation unit at RCI, and thus presumably cell # 2107, was new and well-maintained. (Aff. Bartlien at ¶ 3.) Also pursuant to the Code, all inmates in segregation must have an opportunity to shower once every four days. Wis.Admin.Code § DOC 303.70(6). Neither McNeal nor Erving makes any allegation that, in violation of these provisions, unsanitary conditions existed as to his person. The Code further requires that inmates in segregation receive the same diet as inmates in the general population, Wis.Admin.Code § DOC 303.-70(2), which diet includes three (3) meals per day, prepared by professional dieticians to meet the nutritional requirements of inmates, and juice or another beverage at every meal. (Aff. Norwell ¶¶ 3, 4.) Neither McNeal nor Erving makes any allegations that, in violation of these provisions, circumstances existed otherwise. More particularly, while the Seventh Circuit has also recognized a prisoner's basic right to adequate nutrition, and thus implicitly potable water, in *Woods v. Thieret*, 903 F.2d 1080 (7th Cir.1990); *see also Ramos v. Lamm*, 639 F.2d 559, 571 (10th Cir.1980), neither McNeal nor Erving makes any allegation that he was deprived thereof, despite being unable to drink from the sink in cell # 2107.

In light of all the evidence, therefore, the Court concludes that, as a matter of law, neither McNeal nor Erving was deprived of a basic human need. As such, they have failed to demonstrate the existence of the first component of a prima facie Eighth Amendment case, *Wilson*, —— U.S. at ——, 111 S.Ct. at 2324; *Williams*, 952 F.2d at 824, and their complaint must fail.

## III. SUMMARY

For the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' motion for summary judgment be **GRANTED**.

**SO ORDERED.**