892 F.2d 75
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Haywood WILLIAMS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Haywood WILLIAMS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Haywood WILLIAMS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Haywood WILLIAMS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Haywood WILLIAMS, Jr., Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Haywood WILLIAMS, Jr., Defendant-Appellant.
 Nos. 88-7340, 88-7341, 88-7342, 88-7293, 88-7354 and 88-7794.
 United States Court of Appeals, Fourth Circuit.
 Submitted: Oct. 20, 1989.
Decided: Dec. 11, 1989.
Rehearing and Rehearing In Banc Denied Jan. 25, 1990.
 
 Haywood Williams, Jr., appellant pro se.
 Henry Edward Hudson, United States Attorney, Office of the United States Attorney, for appellee.
 Before MURNAGHAN and SPROUSE, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Haywood Williams, Jr. appeals the district court orders denying him a copy of his presentence report and medical records, denying a motion to vacate his convictions brought under 28 U.S.C. § 2255, denying a motion to expand the record and for funds to employ experts, and denying multiple motions to reconsider the denial of the § 2255 motion. For the reasons stated below we remand with instructions to vacate the sentence on the 21 U.S.C. § 846 conviction; in all other respects we affirm the judgments and orders of the district court.
 
 
 2
 Haywood Williams, Jr., was convicted in 1980 after a jury trial of conspiracy to possess with intent to distribute both heroin and cocaine, in violation of 21 U.S.C. § 846 (Count 1); engaging in a continuing criminal enterprise in violation of 21 U.S.C. § 848 (Count 2); interstate travel to promote, manage and facilitate the distribution of a Schedule I controlled substance in violation of 18 U.S.C. § 1952(a)(3) (Counts 6, 7, and 8); possession of heroin with intent to distribute it in violation of 21 U.S.C. § 841(a)(1) (Count 9); and distribution of heroin in violation of 21 U.S.C. § 841(a)(1) (Count 10). Williams was sentenced to concurrent terms of 15 years and life, respectively, on Counts 1 and 2, and to terms of 5 years, 5 years, 15 years, and 15 years, respectively, on the other counts, consecutive to each other and to the sentences imposed on counts 1 and 2. Williams' convictions and sentences were affirmed on appeal. United States v. Williams, No. 80-5117 (4th Cir. June 30, 1981) (unpublished). A subsequent motion under Fed.R.Crim.P. 35 challenging the sentences and raising a number of collateral attacks to the convictions was also denied and the dismissal was affirmed on appeal. United States v. Williams, No. 83-6639 (4th Cir. Oct. 4, 1984) (unpublished).
 
 
 3
 * No. 88-7794
 
 
 4
 The issues involved in Nos. 88-7794, 88-7293, and part of 88-7340 relate to Williams' requests for a copy of his presentence report and for copies of his medical records. In United States Department of Justice v. Julian, 486 U.S. 1, 56 U.S.L.W. 4403 (U.S. May 16, 1988) (No. 86-1357), the Supreme Court was presented with the question of whether the Freedom of Information Act (FOIA) required the Department of Justice and the Parole Commission to provide inmates copies of the inmate's own presentence reports. The Court concluded that the FOIA required that the presentence reports be disclosed, except as to matters relating to confidential sources, diagnostic opinions, and other harmful information. The district found Julian to be inapplicable to a request for a copy of the district court's presentence report. We agree. We conclude that the district court did not abuse its discretion in refusing to provide Williams with the presentence reports and with medical records.
 
 
 5
 Although Julian makes a strong statement in favor or disclosing presentence reports to inmates, we decline, on this record, to extend Julian to court records. Williams' right under the FOIA to obtain a copy of his presentence report from the Bureau of Prisons, the Parole Commission, or the Department of Justice is undisputed after Julian. The report becomes an agency record and is accessible by way of an FOIA action filed in the district court where the inmate resides. See, e.g., 5 U.S.C. § 552(a)(4)(B). The federal court, however, is not an "agency" under the FOIA. Consequently, the district court's copy of the presentence report is a court record not covered by the FOIA. The report can be obtained from the district court only in the exercise of that court's discretion based upon a showing of need.
 
 
 6
 Generally, this Court has required indigent litigants requesting documents or transcripts at government expense to show a particularized need for the requested material. Jones v. Superintendent, Virginia State Farm, 460 F.2d 150 (4th Cir.1972), cert. denied, 410 U.S. 944 (1973). In United States v. Glass, 317 F.2d 200, 202 (4th Cir.1963), this Court observed that a desire to comb the transcript in search of error is insufficient. If matters which form the basis of the collateral attack are within the knowledge of the petitioner, a sufficient need for a transcript will not be present. United States v. Shoaf, 341 F.2d 832, 835 (4th Cir.1964). At the time of Williams' initial request for the presentence report and the medical records he did not have a § 2255 motion pending. He offered no reason why he needed the presentence report, although presumably he felt that he needed it to prepare his § 2255 motion. Regarding the medical records, Williams asserted that they were needed "in order to effective[ly] prepare a Section 2255 motion." Under Jones, Glass, and Shoaf, Williams has not demonstrated sufficient need such that the district court's refusal to provide the material can be said to be an abuse of discretion. It is apparent from the comprehensive § 2255 motion that Williams filed challenging his drug convictions that the presentence report and the medical records were not necessary for preparation of that motion. Accordingly, we affirm the order in No. 88-7794 denying the presentence report and medical records.
 
 II
 No. 88-7393
 
 7
 The district court denied Williams' request to appeal the denial of the presentence report in forma pauperis on the grounds that Williams' appeal was frivolous and he had not provided the court with an affidavit concerning his financial condition. Williams filed a motion to vacate the order denying the presentence report, and renewed his request for the medical records.[1] The district court denied the motion to vacate and the renewed request for medical records. The court observed that since Williams had filed a § 2255 motion, the court would review the renewed request for the materials under its discretionary authority to grant discovery. The court denied both the presentence report and the medical records, however, because Williams had failed to show good cause for their production. Williams appealed.
 
 
 8
 The denial of leave to appeal the order denying the presentence report in forma pauperis was not error. Williams, a frequent litigator, did not file an affidavit concerning his financial condition in order to permit the court to make an indigency determination. In any event, it is apparent that the district court treated the motion to vacate the order denying the presentence report as a renewed request for production of documents filed in a pending § 2255 action. In fact, the court denied Williams leave to appeal in forma pauperis from the order denying the motion to vacate on the grounds that it was a non-appealable discovery order filed in the pending § 2255 proceeding.
 
 
 9
 We agree with the district court that the order denying the renewed request for the presentence report and medical records was an interlocutory discovery order which was not immediately appealable. See United States v. Ryan, 402 U.S. 530, 532-33 (1971) (orders respecting matters pertaining to discovery are interlocutory in nature and generally not appealable). Accordingly, we are constrained to dismiss the appeal in No. 88-7293 as interlocutory. However, because final judgment has been entered in the underlying § 2255 action, and because the request for the presentence report and medical records was a part of the § 2255 action, we will reach the merits of the issue. On the merits, we conclude that the denial of the renewed request for the presentence report and the medical records was proper. Although Williams was armed with the Julian decision (which had been decided subsequent to his earlier request for the presentence report) when he renewed his request, as previously discussed, Julian did not compel a different result. Moreover, the court did not abuse its discretion in refusing to supply Williams with the requested material because Williams once again failed to demonstrate a particularized need.
 
 III
 
 10
 Appeals related to the denial of the § 2255 motion
 
 
 11
 The § 2255 motion presented 25 claims set out in comprehensive detail. The court did not order the government to respond to the motion. Moreover, in its order dismissing the § 2255 motion the district court appears to have addressed only the three claims presented on the printed § 2255 form provided prisoners for filing § 2255 motions. The court listed the claims for relief as (1) Williams was arraigned while legally incompetent and without the effective assistance of counsel in violation of due process; (2) the post-indictment ex parte order for psychiatric examination violated the fifth and sixth amendments; and (3) the inadequacy of the mental competency examination violated the fifth and sixth amendments. The court made no explicit mention of the remaining 22 claims in the order of dismissal and failed to comment on the claims when they were brought to the court's attention in the multiple motions for reconsideration.
 
 
 12
 In this regard, several circuit courts of appeals have held that even in summary dismissals of a § 2255 motion, the district court should "enumerate the issues raised by the prisoner, and explain the reasons for that action. Such a disposition provides a basis for appellate review of the dismissal of the motion that, standing alone, might arguably have some merit." United States v. Marr, 856 F.2d 1471, 1472-73 (10th Cir.1988); see also United States v. Edwards, 711 F.2d 633, 634 (5th Cir.1983) (vacating and remanding to give district court opportunity to make findings of fact and conclusions of law); United States v. Counts, 691 F.2d 348, 349-50 (7th Cir.1982) (per curiam) (although affirming summary dismissal, court stressed that preferred practice is for district court to enumerate issues and explain legal grounds for their summary dismissal); Newfield v. United States, 565 F.2d 203, 208 (2d Cir.1977) (same).
 
 
 13
 Moreover, § 2255 requires that the district court order a responsive pleading from the government unless the motion and the entire record "conclusively show" that the petitioner's claims are meritless. Summary dismissal is warranted only where it "plainly appears" that the petitioner cannot obtain relief. Habeas Corpus Rule 4(b), 28 U.S.C. foll. § 2255. In Raines v. United States, 423 F.2d 526, 529 (4th Cir.1970), this Court observed that the better practice prior to summary dismissal of a § 2255 application is to require a responsive pleading from the government. Consistent with Raines, any doubt regarding whether to order a responsive pleading should be resolved in favor of the applicant.
 
 
 14
 We need not remand this case for explicit consideration of the remaining 22 claims because, after careful consideration of all of Williams' 25 claims and the trial and appellate record in this case, including transcripts of the pretrial, trial, and post-trial proceedings, we conclude that, with the exception of the multiple sentence claim discussed below, none of Williams' claims entitles him to relief. However, notwithstanding our disposition in this case, we stress that when a district court concludes that a collateral attack is subject to summary dismissal, the court should enumerate the claims presented by the applicant and give its reasons why the claims are without merit.
 
 
 15
 Most of the claims presented in the § 2255 motion were either raised on direct appeal, or raised in an earlier post conviction proceeding, and rejected. Absent an intervening change in the law requiring reconsideration of the claim, Williams may not raise a claim on collateral attack which was previously rejected on direct appeal. Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir.), cert. denied, 429 U.S. 863 (1976); see also Davis v. United States, 417 U.S. 333, 342 (1974) (although legal issue raised in direct appeal determined against petitioner, he is not precluded from raising issue in § 2255 proceeding if there has been intervening change in law which warrants reconsideration of claim). Similarly, absent an intervening change in the law, the court need not reconsider a claim rejected in a previous post conviction action. Sanders v. United States, 373 U.S. 1 (1963).
 
 
 16
 One claim that does require reconsideration concerns Williams' multiple sentences under Counts 1 and 2 of the indictment. Williams was convicted and sentenced under both § 846 for conspiracy and § 848 for operating a continuing criminal enterprise. Congress did not intend that a defendant be punished under both § 846 and § 848. United States v. Porter, 821 F.2d 968, 978 (4th Cir.1987), cert. denied, 56 U.S.L.W. 3608 (U.S. Mar. 7, 1988) (No. 87-1334), citing Garrett v. United States, 471 U.S. 773, 794 (1985); Jeffers v. United States, 432 U.S. 137, 154-58 (1977). Therefore, we vacate the order in the § 2255 proceeding to the extent that it denied relief on this claim and remand with instructions to vacate the sentence imposed on the § 846 conviction.
 
 
 17
 The only other claim that we think requires additional discussion concerns the allegations of ineffective assistance of counsel set out in claim number 24. To the extent that the remaining claims were not raised and rejected in an earlier proceeding, they are without merit.
 
 
 18
 Williams contends that he was denied the effective assistance of counsel from before his arraignment through his direct appeal. Because the district court noted that it had reviewed not only the transcript of the mental competency hearing "but the record as a whole," prior to concluding that Williams was provided effective assistance of counsel, we have reviewed this claim to determine whether, as a matter of law, it fails under the two-pronged standard of Strickland v. Washington, 466 U.S. 668 (1984).
 
 
 19
 Williams alleges a host of errors and omissions on the part of his counsel, most of which are without support in the record. Williams' most forceful allegations concern his trial counsel's failure (1) to move for a toxicologist to offer expert testimony on the effects of multiple years of heavy drug abuse, when the option was offered by the trial court; (2) to move for a partisan psychiatric witness under 18 U.S.C. § 3006A(e) to assist the defense in preparing an insanity defense and in cross-examining government psychiatric experts; and (3) to prepare the "defense" psychiatrist's testimony regarding Williams' mental ability during the time period covered by the indictment.
 
 
 20
 The record reveals that the psychiatrist that was appointed at trial counsel's request (Dr. Heyder) was not appointed as a defense expert, as contemplated under 18 U.S.C. § 3006A(e). Instead, Dr. Heyder was instructed to submit his report to the United States Attorney, who was ordered to furnish the report to the defense. Defense counsel neither objected to this procedure nor requested a partisan defense expert. Additionally, when offered the services of a toxicologist on the first day of trial, defense counsel failed to request the appointment of one. Finally, defense counsel put the defense psychiatrist on the stand as a defense witness supposedly to offer expert testimony concerning Williams' mental state during the period covered by the indictment. The psychiatrist testified, however, that he had not formed an opinion regarding Williams' mental state during the applicable period. Consequently, there was no expert testimony on this aspect of Williams' defense. Defense counsel's failure to prepare the witness for this question after calling him as a defense witness was inexplicable.
 
 
 21
 We conclude that remand is not necessary for further development of this issue because, assuming for purposes of argument that counsel's performance was deficient in the respects that Williams alleges, relief is not required as Williams cannot show that but for counsel's errors there is a reasonable probability that the result of the trial would have been different. To reach this result we assume that the experts that Williams did not have would have testified in the manner that Williams desired. Specifically, there would have been expert testimony that as a result of Williams' drug abuse he was unable to form the specific intent necessary for a conviction under each count of the indictment, or that he was unable to conform his conduct to the requirements of law or to appreciate the nature of his actions.
 
 
 22
 Even had this presumed testimony been offered, however, it would merely have presented a jury question of whose expert to believe. In addition, there was an abundance of lay witness testimony from heroin users regarding the effects of the drug as well as testimony concerning Williams' apparent ability to function during the period covered by the indictment. Moreover, Williams testified that during 1974, a period covered by the indictment, he carried himself in such a manner that even people who knew him did not know that he was an addict. This testimony is a clear contradiction of the theory of defense that he submits should have been offered. Williams further damaged his mental incapacity defense when he testified that, during the time covered by the indictment, he sold "synthetic heroin" which he prepared without assistance from a formula given him by a chemist inmate at the Medical Center in Springfield, Missouri.
 
 
 23
 There was also devastating testimony given by Melvin Davis concerning Williams' plan of defense if he were ever charged with drug violations. Davis testified that Williams' plan, if faced with a drug charge, would be to plead insanity. Further, in support of his attempt to enter a plea of insanity, Williams would "jump up on the table, throw something at a judge, pull down his pants and do his business on the floor." Finally, the examining psychiatrist from the Medical Center for Federal Prisoners, at Springfield, Missouri, Dr. Herbert Eisaman, testified in rebuttal concerning the lengthy evaluation of Williams to determine his competency from January 1973 through April 1979 (the term of the indictment). Dr. Eisaman testified that the opinion of the entire forensic staff was that Williams was responsible and did not suffer from a mental illness during the time covered by the indictment. Dr. Eisaman was also examined concerning Williams' claim of narcolepsy. The conclusion of the neurosurgeon, after electroencephalographic and other examinations, was that Williams did not have narcolepsy. Additionally, Dr. Eisaman was asked if he found "any signs of any mental illness that would have impaired [Williams'] ability to appreciate the wrongfulness of his habit or prevent him from conforming his conduct to the requirements of law during that period?" Dr. Eisaman testified that he had not. On cross-examination Dr. Eisaman admitted that there had been an earlier mental examination of Williams in 1971-72 and that there had been a disagreement between the psychiatrists and the psychologist concerning Williams' mental state. The fact of Williams' earlier diagnosis of incompetency, therefore, was put before the jury.
 
 
 24
 Although it is difficult to predict what a jury might have done with expert defense testimony in support of Williams' lack of criminal responsibility defense, we conclude, after careful consideration of this claim and the entire record, that based upon the overwhelming evidence of Williams' guilt and the other testimony offered in this case, there is no reasonable probability that the jury's verdict would have been different absent defense counsel's presumed errors and omissions. See Strickland v. Washington, 466 U.S. 668, 694 (1984) (in addition to proving that counsel's performance was deficient, applicant must show that "there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome").
 
 
 25
 Similarly, Williams' ineffectiveness claims concerning his direct appeal do not entitle him to relief. Williams was represented by different counsel on appeal. Williams contends that his appellate counsel was ineffective because he failed to raise certain issues that Williams thought were meritorious. The due process clause guarantees a criminal defendant the effective assistance of counsel on his first appeal as of right. Evitts v. Lucey, 469 U.S. 387 (1985). Court-appointed counsel, however, need not raise every nonfrivolous issue requested by the defendant. Jones v. Barnes, 463 U.S. 745 (1983). It is apparent from the briefs filed in the direct appeal that counsel concentrated on the most meritorious issues in the case. It was not ineffective assistance for counsel not to dilute the strength of his argument by including the claims that Williams now contends should have been presented. In any event, counsel listed the other claims that Williams wanted the Court to consider. Those claims, therefore, were before the Court on direct appeal and considered. They were simply found to be without merit.
 
 
 26
 The evidence in this case was overwhelming. Williams had no viable defense. Since Williams rejected a plea bargain, it is unlikely that any attorney could have obtained a different result.
 
 IV
 Conclusion
 
 27
 In conclusion, for the reasons previously stated we (1) grant leave to proceed in forma pauperis and affirm the order in No. 88-7794; (2) deny leave to proceed in forma pauperis and dismiss the appeal in No. 88-7293 as interlocutory; (3) vacate in part the order denying the § 2255 motion (No. 88-7340), remand with instructions to vacate the sentence imposed on the § 846 conviction, and in all other respects affirm the orders underlying the appeal in No. 88-7340[2] ; (4) affirm the orders underlying the appeals in Nos. 88-7341 and 88-7342; and (5) grant leave to proceed in forma pauperis and affirm the order underlying No. 88-7354.
 
 
 28
 Accordingly, because the dispositive issues recently have been decided authoritatively and oral argument would not aid the decisional process, we dispense with it.
 
 
 29
 No. 88-7340, AFFIRMED IN PART, VACATED IN PART, AND REMANDED.
 
 
 30
 No. 88-7341, No. 88-7342, No. 88-7354, No. 88-7794, AFFIRMED.
 
 
 31
 No. 88-7293, DISMISSED.
 
 
 
 [1]
 Williams filed his § 2255 motion to vacate his convictions and sentences on October 11, 1988
 
 
 [2]
 In view of our disposition in this case we deny Williams' motion to dismiss the case and remand, or in the alternative, for appointment of counsel